**Eugene TRAYNOR, Plaintiff,**

v.

**Harry N. WALTERS, Administrator of the Veterans Administration; and the Veterans Administration, Defendants.**

No. 82 Civ. 4563 (IBC).

United States District Court,
S.D. New York.

April 4, 1985.

Legal Action Center of the City of New York, Inc., New York City, for plaintiff; Margaret K. Brooks, Richard C. Boldt, Catherine H. O'Neill, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants; Carolyn L. Simpson, Asst. U.S.Atty., New York

City, Dean Gallin, Joan Weber, Veterans Admin., Washington, D.C., of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiff seeks a declaratory judgment providing that the refusal of the Veterans Administration ("VA") to consider rehabilitated alcoholics for extensions of veterans' educational benefits pursuant to 38 U.S.C. §§ 1651–1662, violates the nondiscrimination provisions of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701–794, and the fifth amendment. Plaintiff also seeks individual and injunctive relief. Defendant moves to dismiss plaintiff's action on the ground of lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) or, in the alternative, for summary judgment in accordance with Fed.R.Civ.P. 56. Plaintiff cross-moves for summary judgment.

## I. THE FACTS

Plaintiff is a 43 year old veteran of the United States Army who suffered from alcoholism until 1974. It is not known exactly how or why this condition developed, but plaintiff's deposition testimony reveals that both his father and brother imbibed to excess and that plaintiff himself first drank to the point of intoxication when he was between eight and ten years old. (D. 36–37; F. 3)[1] During the time he was in high school, 1955–60, plaintiff consumed alcohol regularly on weekends and occasionally on weeknights. (D. 37–39; F. 3) Beginning in 1960, he began drinking more heavily and frequently. Sometime after 1964, plaintiff developed a pattern of daily absorption to the point of intoxication; he had grown to be dependent upon alcohol. (D. 11–17, 47; F. 3)

Due to the effect of the alcohol on him, plaintiff's employment record is sporadic. In October 1963, plaintiff enlisted in the Army National Guard and served a six month period of active duty, during which time he completed basic training, from January through June 1964. (D. 9–10, 43; Ex. B–8 at 2; F. 2)

In December 1964, he was hired to work nights as a maintenance mechanic by Lincoln Center for the Performing Arts in New York City. (D. 10–11; F. 2) However, he drank liquor during work hours, frequently leaving the site altogether to go to nearby bars. As a result, he was transferred to the day shift where he could be more closely supervised, but he was discharge in late 1967 for intoxication on the job and for job performance problems caused by his alcoholism. (D. 11–18, 46–47; F. 3)

After he lost that position plaintiff was called back to active duty in the Army. He served from February 27, 1968 through August 27, 1969 (18 calendar months), primarily in West Germany. Unfortunately, plaintiff's drinking habit continued while he served on active duty; this brought on suffering from seizures; sixty-five days were deducted from his active duty period due to alcohol-related rule violations. Plaintiff was honorably discharged with the rank of private effective August 27, 1969. (D. 23; Ex. C–1; F. 2)

Following his discharge, plaintiff returned to Queens, New York where he lived with his family. In the next four and one half years his alcoholism became progressively more severe. During this period he maintained a pattern of daily drinking, resulting in frequent seizures, loss of consciousness, delirium tremors, blackouts and gastrointestinal bleeding. Indeed, he was hospitalized five times in these four and one half years for treatment for saturated alcoholic disorders.[2]

1. Throughout this opinion, the letter "D." followed by a number in parentheses indicates a particular page number in the transcript of defendants' deposition of plaintiff. The letter "F." followed by a number in parentheses indicates a particular page number in plaintiff's and defendants' Joint Statement of Undisputed Facts pursuant to S.D.N.Y. R. 3(g). The same applies to an "Ex." which refers to a specific exhibit.

2. His dates of hospitalization and summary of the diagnosed disorders for which he received treatment were as follows:
(a) March 6–12, 1970: alcoholism with delirium tremors; seizure disorder; hematemesis;

Although at an early age plaintiff was aware that he drank more than other people, it made him feel "more stable ... and more normal." (D. 47–48, 53–54) His family and treating physicians told him he had a drinking problem, but he denied identifying himself as an alcoholic and persisted in believing that he was able to control or alter his drinking pattern. (D. 47–49, 54–55; F. 5–6)

In February 1974, after his last hospital stay, one of plaintiff's neighbors invited him to attend an Alcoholics Anonymous ("AA") meeting. Plaintiff maintains that within two weeks of his first AA meeting he was able to recognize his drinking problem and his inability to control it. He became a member of AA and continued attending meetings daily (and on occasion in the evening) for more than a year. Astonishingly and commendably, plaintiff has not had a drink since February, 1974; he still continues to be an active participant in AA. (D. 26–29, 54; Ex. B–8 at 3, B–2 at 21; F. 6)

Shortly thereafter plaintiff began seeking employment. He worked in two temporary seasonal jobs before he obtained a permanent job as a maintenance mechanic with a photography concern in New York City in January 1976. He has been employed there full time since then and has been promoted to his present position as Supervisor of Maintenance. (D. 31–34; B–8 at 3–4; F. 6)

In the fall of 1977, plaintiff applied for admission to and was accepted by City College of New York ("CCNY") in its bachelor's degree program in mechanical engineering. In January 1978, plaintiff commenced his studies at CCNY attending school at night and working full time during the day.

Upon his admission to college, plaintiff applied for veteran's educational assistance benefits pursuant to 38 U.S.C. § 1651 *et seq.* Defendants determined that he was entitled to receive the benefits made eligible by virtue of his service on active duty in the Army and his receipt of an honorable discharge. Based on the number of months plaintiff had served on active duty, the VA calculated that he was entitled to receive 24 months of educational assistance benefits.

However, as plaintiff knew, these benefits had to be absorbed before August 28, 1979 in order to satisfy 38 U.S.C. § 1662(a)(1), which provides:

No educational assistance shall be afforded an eligible veteran under this chapter beyond the date 10 years after the veteran's last discharge or release from active duty ...; except that, in the case of any eligible veteran who was prevented from initiating or completing such veteran's chosen program of education within such time period because of a physical or mental disability which was not the result of such veteran's own willful misconduct, such veteran shall, upon application ... be granted an extension of the applicable delimiting period for such length of time as the Administrator determines, from the evidence, that such veteran was so prevented from initiating or completing such program of education.

Pursuant to the statute, plaintiff was entitled to receive educational benefits from the date of his discharge, August 27, 1969, until August 28, 1979, ten years later. However, by August 1979, plaintiff would have received only nine and one half of the 24 months of educational assistance benefits to which he was entitled. Consequently, in May 1979, plaintiff applied to the VA for an extension of his delimiting date (pursuant to 38 U.S.C. § 1662(a)(1)) on the

(b) May 3–11, 1971: alcoholism; gastrointestinal bleeding; hematemesis;
(c) April 30–May 11, 1973: alcoholism; seizure disorder; alcoholic gastritis with bleeding;
(d) August 29–September 1, 1973: history of alcoholism; convulsive disorder; alcoholic gastritis; gastrointestinal bleeding;

(e) January 24–February 2, 1974: chronic alcoholism; gastrointestinal bleeding; delirium tremors.
(D. 25–26; Ex. B–2, B–3, B–6 at 2, B–8 at 2–3, 7–8; F. 4–5)

ground that his history of, and gradual recovery from, alcoholism had prevented him from initiating or pursuing his education until he first applied to CCNY.[3] Plaintiff filed his claim in defendants' regional office in New York City. (D. 63; Ex. B–1)

On August 9, 1979, defendants issued a "Rating Decision" denying plaintiff's claim for a delimiting date extension; it stated in part that plaintiff's "periods of hospitalization because of alcoholism are not for consideration, since they are a result of the veteran's own willful misconduct." (Ex. B–3)

Plaintiff appealed the rating decision to the Board of Veterans Appeals. (Ex. B–7) In his statement on appeal, plaintiff quoted the American Medical Association's *Manual on Alcoholism* in support of his argument that alcoholism is universally recognized by the medical community as an illness capable of treatment. He contended further that the VA's characterization of alcoholism as willful misconduct was "wrong in fact and in law," and contradicted other federal agencies and statutes which recognize alcoholism as a disease. (Ex. B–7) A hearing was held in defendants' regional office in New York City where plaintiff was represented by counsel and witnesses called to testify in his behalf. In its findings and decision on plaintiff's appeal, the Board of Veterans Appeals upheld the original rating decision, stating:

> We accept the premise that he may have been precluded from engaging in a program of education during the time he was an active alcoholic. We note that the simple drinking of alcoholic beverage is not of itself willful misconduct. However, the deliberate drinking of a known poisonous substance or under conditions which would raise a presumption to that effect will be considered willful misconduct. While the medical community may view alcoholism as an illness for treatment purposes, it is our view that resort to alcohol, as shown in this case, is a willful misconduct condition. Therefore,

the veteran may not be granted an extension of his delimiting period because of physical or mental disability brought about by his alcoholism, resulting from his own willful misconduct.

(Ex. B–9 at 4)

Plaintiff subsequently request a reconsideration of the decision by the Board of Veterans Appeals on the ground that the Board had erred as a matter of fact and law. (Ex. B–10) His request was granted and, on June 19, 1981, a hearing was held before an enlarged panel of the Board of Veterans Appeals in Washington, D.C. Its "Findings and Decision (Reconsideration)" was issued on November 9, 1981 and affirmed the original decision on appeal. (Ex. B–12)

Having exhausted his administrative remedies, plaintiff filed this action seeking declaratory, injunctive and individual relief. Defendants oppose the claims and argue that this Court has no subject matter jurisdiction over this action.

## II. THE LAW

### A. JURISDICTION

Defendants move to dismiss plaintiff's action on the ground that this Court lacks subject matter jurisdiction. Defendants rely on 38 U.S.C. § 211(a), which reads in pertinent part:

> [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

Defendants contend that plaintiff's complaint seeks to overturn a decision of the Administrator made in the interpretation and application of a particular statute, 38 U.S.C. § 1662(a)(1), to a particular set of facts. They further argue that plaintiff's

---

**3.** Plaintiff stated that he did not think he was capable of working full time and going to school because he was *"just really learning how to live again."* (D. 62, 64) (emphasis ours)

exclusive remedy was his appeal to the Board of Veterans Appeals (38 U.S.C. §§ 4001–4009) and, once his case was decided by the Board, the decision was final and is not subject to review by this Court.

Plaintiff asserts that this Court has jurisdiction because plaintiff's challenge arises under the Constitution and laws of the United States. Specifically, plaintiff alleges that defendants' procedures and regulations with regard to the extension of delimiting dates for alcoholics violate the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, and the equal protection and due process clauses of the fifth amendment.

■ Furthermore, as plaintiff correctly insists, jurisdictional limitations in statutes are to be interpreted narrowly in light of a basic presumption of judicial review which governs in the absence of clear and convincing evidence of congressional intent to the contrary. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *Rusk v. Cort*, 369 U.S. 367, 379–80, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962); *Kirkhuff v. Nimmo*, 683 F.2d 544, 546 (D.C.Cir.1982).

In *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court held that § 211(a) did not preclude judicial review of the constitutionality of veterans' benefits legislation; that any other holding would raise serious questions about the constitutionality of § 211(a). The Court held that § 211(a) is "aimed at questions arising in the *administration* of a *statute*" and noted that its purpose is two-fold:

(1) to insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation, and (2) to insure that the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions will be adequately and uniformly made.

415 U.S. at 367, 370, 94 S.Ct. at 1167 (emphasis in original)

■ Federal courts have since applied *Johnson*'s holding to constitutional challenges to VA regulations and to the authority of the VA to promulgate regulations. *Devine v. Cleland*, 616 F.2d 1080 (9th Cir. 1980); *Wayne State University v. Cleland*, 590 F.2d 627 (6th Cir.1978); *Tinch v. Walters*, 573 F.Supp. 346, 347 (E.D.Tenn. 1983); *Beauchesne v. Nimmo*, 562 F.Supp. 250, 254 (D.Conn.1983). In short, judicial review of decisions of the VA is not precluded when the decision involves issues such as the constitutionality of a statute or a regulation.

■ To determine whether plaintiff's claim arises under the Constitution and laws of the United States, we look to the allegations of the complaint. *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir.1978). Here, plaintiff challenges the VA's interpretation of § 1662(a)(1) of the Veterans' Educational Benefits statute which distinguishes between alcoholics with secondary organic disabilities, or those whose alcoholism is a secondary effect of an underlying psychological disorder, and alcoholics who do not suffer from these defects; the VA regulation permits consideration of an application for an extension of the delimiting date to the former group while denying it to the latter. Plaintiff claims that this regulation is violative of the Rehabilitation Act, 29 U.S.C. § 794, and the fifth amendment's due process and equal protection guarantees. Since this decision requires us to examine constitutional and statutory questions and not merely issues of VA policy, we conclude, in accordance with the Supreme Court's holding in *Johnson, supra*, that we are not precluded from exercising our jurisdiction in this matter by 38 U.S.C. § 211(a). Accordingly, defendants' motion to dismiss for lack of jurisdiction is denied.

## B. CONSTITUTIONAL CHALLENGE

■ Plaintiff claims that the VA's regulations defining "alcoholism" deprive him of due process and equal protection of the

laws as guaranteed by the fifth amendment.

As we have already stated, 38 U.S.C. § 1662(a)(1) prohibits an extension of the delimiting date for veterans' educational benefits to any veteran whose physical or mental disability is the result of such veteran's own "willful misconduct." 38 C.F.R. § 3.1(n) defines the term "willful misconduct" as follows:

"Willful misconduct" means an act involving conscious wrongdoing or known prohibited action (malum in se or malum prohibitum)....

(1) It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences.

(2) Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct.

(3) Willful misconduct will not be determinative unless it is the proximate cause of injury, disease or death.

More specifically, 38 C.F.R. § 3.301(c)(2) defines the term "willful misconduct" as applied in the context of alcoholism in this manner:

(2) *Alcoholism.* The simple drinking of alcoholic beverage is not of itself willful misconduct. The deliberate drinking of a known poisonous substance or under conditions which would raise a presumption to that effect will be considered willful misconduct. If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results approximately [sic] and immediately in disability or death, the disability or death will be considered the result of the person's willful misconduct. Organic diseases and disabilities which are a secondary result of the chronic use of alcohol as a beverage, whether out of compulsion or otherwise, will not be considered of willful misconduct origin.

In Administrator's Decision, Veterans' Administration No. 988 (Aug. 13, 1964), the VA recognized a distinction between alcoholism as a primary disorder and "alcoholism as secondary to and a manifestation of an acquired psychiatric disorder. If the latter condition is found the resulting disability or death is not to be considered as willful misconduct."

It is apparent that the VA distinguishes between alcoholism as a primary disorder, on the one hand, and alcoholism as the secondary result of a psychiatric disorder and organic disabilities which result from chronic use of alcohol, on the other. Clearly, the former is classified as a disability caused by a veteran's own willful misconduct; the latter is not.

In challenging the constitutionality of these regulations, plaintiff argues that the distinction between primary alcoholics and those whose alcoholism results from a diagnosable psychological disorder, or those who suffer from organic disabilities as a result of their alcoholism, creates two classes of alcoholics. He asserts that the classification of primary alcoholism as willful misconduct, resulting in the complete exclusion of primary alcoholics from consideration for extensions of delimiting dates, violates constitutional guarantees.

In *Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1974), the Supreme Court declared:

[A] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status ... though of course Congress may not invidiously discriminate among such claimants on the basis of a 'bare congressional desire to harm a politically unpopular group,' ... or on the basis of criteria which bear no rational relation to a legitimate legislative goal.

It is clear that veterans' educational benefits are noncontractual in nature; consequently, pursuant to the Supreme Court's opinion in *Weinberger,* the test to be applied to defendants' classification of primary alcoholics is whether there is a rational relation to a legitimate government purpose in the classification.

We have no hesitancy in concluding that there is a rational basis for this classification by the VA: In order to avoid the

possibility of fraudulent claims by primary alcoholics whose disabilities are less easily proved, the VA has chosen to favor those who have clear-cut, medically demonstrable disabilities which existed during the time they were eligible for educational assistance benefits and which were the cause of their inability to begin or complete their education. (Ex. B–12 at 6)

Because we find a rational relation between the two classifications of alcoholics and the legitimate goal of the VA we find that plaintiff's challenge to the constitutionality of the VA's "willful misconduct" regulations must fail.

## C. STATUTORY CHALLENGE

Plaintiff further contends that the VA's "willful misconduct" regulations violate the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–794. Specifically, he argues that he is a handicapped person within the meaning of the Act, and that he has been discriminated against solely on that basis.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides in relevant part:

No otherwise qualified handicapped individual in the United States, as defined in section 7(6) of this Act shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency ... The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section.

In determining whether § 504 has been violated, our Court of Appeals has enunciated a four-part test requiring a plaintiff to demonstrate that: (1) he is a "handicapped individual" under the Act; (2) he is "otherwise qualified" for the program of benefits from which he has been excluded; (3) he has been excluded "solely" because of his handicap; and (4) the program from which he is excluded is subject to § 504. *Doe v. New York University,* 666 F.2d 761, 774–75 (2d Cir.1981). Once plain-

tiff makes out his *prima facie* case, the burden shifts to defendants, who must make a substantial showing that the regulation or practice is justified. Mere reasonableness will not suffice. *New York State Association for Retarded Children v. Carey,* 612 F.2d 644, 649–50 (2d Cir.1979).

We now proceed to examine each element of the four-part test. First, Congress has defined a handicapped individual as follows:

[T]he term "handicapped individual" means, for the purposes of titles IV and V of this Act [under which the instant case falls], any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(7)(B).

After the enactment of § 504, the Department of Health, Education and Welfare ("HEW") was designated the leading agency to promulgate regulations pursuant to Executive Order 11914 (issued April 28, 1976). The President instructed HEW to:

coordinate the implementation of Section 504 ... by all Federal departments and agencies empowered to extend Federal financial assistance to any program or activity. The Secretary shall establish standards for determining who are handicapped individuals and guidelines for determining what are discriminatory practices within the meaning of Section 504.... In order to implement the provisions of Section 504, each Federal department and agency empowered to provide Federal financial assistance shall issue rules, regulations, and directives, consistent with the standards and procedures established by the Secretary of Health, Education, and Welfare.

In the process of carrying out the Executive Order, HEW was faced with the question of whether alcoholics (and drug addicts) are "handicapped individuals" within the meaning of the Rehabilitation Act. The Secretary requested an opinion of the

Attorney General of the United States; that opinion was released in 1977. (43 Op. Att'y Gen. No. 12 (April 12, 1977))

The Attorney General concluded that § 504 "does in general prohibit discrimination against alcoholics and drug addicts in federally assisted programs solely because of their status as such, just as it prohibits discrimination solely on the basis of other diseases or conditions covered by the Act." [4]

The opinion reviews the legislative history of the Rehabilitation Act. Specifically, it notes that the 1973 Act replaced the Vocational Rehabilitation Act, 29 U.S.C. § 31 *et seq.* (1970), which defined a handicapped person as one who had a physical or mental disability that impaired his employability but might reasonably be expected to benefit from the vocational rehabilitation services provided by the Act. The Rehabilitation Act continued the approach taken in the earlier statute with regard to vocational rehabilitation and preserved its definition of "handicapped individual." *See* 29 U.S.C. § 706(7)(A). The opinion notes that alcoholics were considered handicapped under the 1970 Act; that the House Report on the 1973 Act reflects this fact and gives no indication that it intended to alter the meaning under the new Act. 43 Op. Att'y Gen. No. 12 (April 12, 1977).

The opinion further points out that the definition of "handicapped individual" was amended in 1974 to add what is now § 706(7)(B), which encompasses impairments that "substantially limit" one's "major life activities" within the meaning of "handicapped individual." The definition was broadened because the prior version, which only covered impairments to employability, was not adequate for the purposes of the new, broader antidiscrimination provisions in the Rehabilitation Act. Among those provisions is § 504, which prohibits discrimination against handicapped individuals in *any* program or activity receiving Federal financial assistance. This includes programs in housing, health care and education, as well as employment.

Finally, the Attorney General notes that although there is considerable disagreement as to the precise nature of drug addiction and alcoholism, there is a substantial body of authority to support Congress' conclusion that both are diseases which would be included within the meaning of "physical or mental disabilities." The opinion concludes that it is certainly not irrational to read § 504 as including drug addicts and alcoholics, particularly in light of the legislative history of the Rehabilitation Act.

HEW's guidelines implementing § 504 were promulgated in 1978. 43 Fed.Reg. 2132 (1978). As noted earlier, HEW was instructed to define the meaning of "handicapped individual," and its regulations were to serve as the model which all other Federal agencies were to follow. The rule ultimately adopted explicitly includes alcoholics within the meaning of "handicapped person." It reads as follows:

(a) "Handicapped person" means any person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.

(b) As used in paragraph (a) of this section, the phrase:

(1) ... "physical or mental impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, and drug addiction and *acoholism*.

43 Fed.Reg. 2137 (1978). (emphasis added)

■ In 1980, the VA adopted the HEW guidelines, specifically using the exact language quoted in its definition of "handi-

---

**4.** However, the Attorney General was careful to point out that the inclusion of alcoholics and drug addicts within the definition of "handicapped individual" does not mean that they must be permitted to participate in a program, or be hired, if the manifestations of their condition prevent them from adequate participation in the program or performing the job in question. 43 Op. Att'y Gen. No. 12 (April 12, 1977).

capped person." 38 C.F.R. § 18.-403(j)(2)(i)(C). Therefore, in accordance with the first factor enunciated by our Circuit in *Doe v. New York University, supra,* at 774, plaintiff, an alcoholic, clearly comes within the category of "handicapped individual" under § 504 of the Rehabilitation Act.

The second factor for determination in *Doe v. New York University* is whether the plaintiff is "otherwise qualified" for the benefits program from which he has been excluded. An "otherwise qualified" handicapped person is one who is able to meet all of a program's requirements *in spite of* his handicap, as opposed to one who meets all of the requirements *except* as to limitations imposed by the handicap. *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). With regard to educational benefits, the term "otherwise qualified" denotes one who "meets the academic and technical [i.e., nonacademic] standards requisite to admission or participation" with respect to educational programs, and one who "meets the essential eligibility requirements" for the receipt of other services.[5]

It is undisputed that plaintiff meets the basic eligibility for and entitlement to educational assistance benefits under Chapter 34 of the Veterans' Benefits Law. His armed services record and subsequent enrollment in a program of education at CCNY entitled him to educational benefits which he received until the end of his delimiting period. We are, therefore, convinced that plaintiff is an "otherwise qualified" handicapped person.

We must next consider whether plaintiff was denied participation in the program solely on the basis of his handicap. The VA's regulatory scheme defines primary alcoholism as willful misconduct *per se.* This policy resulted in the automatic exclusion of plaintiff from consideration for an extension of his delimiting date based solely on his history of alcoholism. Since plaintiff has demonstrated that he is an otherwise qualified handicapped person and that he was denied an extension due to his past alcoholism, it is apparent that plaintiff was denied an extension solely on the basis of his handicap.

The final factor we must consider under the Second Circuit test in *Doe v. New York University* is whether the veterans' educational assistance program from which plaintiff has been excluded is subject to § 504. The section explicitly states that it covers "*any* program or activity receiving Federal financial assistance or under *any* program or activity conducted by any Executive agency." 29 U.S.C. § 794. (emphasis added)

Furthermore, the VA regulations implementing § 504 specifically list the veterans' educational benefits program as one of the programs to which § 504 applies. 38 C.F.R. 31, Appendix A to Subpart D (Statutory Provisions to Which this Subpart Applies) (1980). Consequently, it is clear that the Veterans' Educational Assistance program is subject to § 504.

In sum, plaintiff has met his burden of proving that he is a handicapped person within the meaning of the Rehabilitation Act, that he is otherwise qualified to receive an extension of his delimiting date, that he was excluded from consideration for an extension solely on the basis of his handicap, and that the veterans' educational benefits program from which he was excluded is subject to § 504; i.e., plaintiff has proven his *prima facie* case of discrimination under § 504 of the Rehabilitation Act, and the burden is on defendants to prove that the challenged regulations are justified in light of § 504. In so doing, defendants may not rest merely on an assertion that the challenged regulations and policy are reasonable; as noted earlier, defendants must make a substantial showing that the regulations are justified. *New*

---

**5.** See 43 Fed.Reg. 2137 (1978) (HEW regulations coordinating federal agency enforcement of § 504); 38 C.F.R. § 18.403(k) (VA regulations implementing § 504).

*York State Association for Retarded Children v. Carey, supra,* at 650.

Defendants argue that the willful misconduct bar is a narrow exception to the Rehabilitation Act. However, defendants fail to recognize that plaintiff is not challenging the willful misconduct language in the statute itself (38 U.S.C. § 1662(a)(1)), but the VA's interpretation and policy reflected in its regulations which define primary alcoholism as willful misconduct. Therefore, in contrast to defendants' assertion there is no conflict between two statutes, i.e., the willful misconduct statute, 38 U.S.C. § 1662(a)(1), and §⁴ 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Furthermore, we find that defendants fail to make a substantial showing that their regulations and policy are justified in light of § 504. Indeed, the VA policy of excluding those with a history of primary alcoholism from consideration for extensions of delimiting dates contravenes the Rehabilitation Act by discriminating against those rehabilitated alcoholics (a remarkable accomplishment) most deserving of aid.

Our opinion is bolstered by a recent decision in the Eastern District of Tennessee. In *Tinch v. Walters,* 573 F.Supp. 346 (E.D. Tenn.1983), the plaintiff, a veteran, was a rehabilitated alcoholic who challenged the same regulations and policy as the instant plaintiff. The Court found that no substantial justification for the VA's policy was apparent, stating, "While the Court cannot find that the policies and regulations are unconstitutional, they are impaired by the application of the willful misconduct bar, and they are in violation of the Rehabilitation Act of 1973, as amended, specifically 29 U.S.C. § 794." 573 F.Supp. at 348.

Similarly, we find that although defendants' regulations challenged herein withstand constitutional scrutiny, they violate § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Accordingly, plaintiff's application for a declaratory judgment is granted. Further, plaintiff's motion for summary judgment is granted and the defendants' motions to dismiss or for summary judgment are denied.

SO ORDERED.