**Eugene TRAYNOR, Plaintiff-Appellee,**

**v.**

**Harry W. WALTERS, Administrator of the Veterans Administration, Defendants-Appellants.**

**No. 422, Docket 85–6208.**

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1985.

Decided May 16, 1986.

Beverly Sherman Nash, Asst. U.S. Atty. for S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., Jane E. Booth, Asst.

U.S. Atty. for S.D.N.Y., of counsel), for defendants-appellants.

Catherine Hart O'Neill, New York City (Margaret K. Brooks, Legal Action Center of the City of New York, Inc., New York City, of counsel), for plaintiff-appellee.

Before TIMBERS, KEARSE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Defendants, the Veterans' Administration ("VA") and the VA administrator, raise two questions on appeal: (1) Did the district court have jurisdiction to review the VA's denial of plaintiff Traynor's claim for extension of his period of eligibility for veterans' educational benefits? (2) Does VA regulation 38 C.F.R. § 3.301(c)(2), which, as interpreted and applied by the VA, treats primary alcoholism as "willful misconduct" barring extension of the period of eligibility for veterans' educational benefits, violate section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794? The district court answered both questions affirmatively. 606 F.Supp. 391. Since we hold on the first question that the district court lacked jurisdiction to review the VA's denial of Traynor's claim, we do not reach the second question.

## BACKGROUND

Plaintiff Eugene Traynor, a 44 year old veteran of the United States Army, suffered from alcoholism over approximately a fifteen year period ending in 1974. During that time, he served on active duty in the army for an 18-month period ending on August 27, 1969, when he was honorably discharged. Since February 1974, when he began to attend Alcoholics Anonymous meetings daily, Traynor has apparently not had a drink.

When Traynor entered college in 1977, he applied for and received veterans' education assistance benefits. Although entitled to 24 months of those benefits based upon his military service, he had used only nine and one-half months of benefits when they were terminated on August 27, 1979.

Traynor's benefits were terminated pursuant to 38 U.S.C. § 1662(a)(1), which, with one exception, limits a veteran's educational assistance to a period of ten years beginning with his discharge from the service. Under the exception, however, a veteran will be granted an extension of his eligibility period if he was prevented from pursuing his educational program due to a physical or mental disability "which was not the result of such veteran's own willful misconduct". 38 U.S.C. § 1662(a)(1).

VA regulations implicitly provide that alcoholism may be considered willful misconduct:

(2) *Alcoholism.* The simple drinking of alcoholic beverage is not of itself willful misconduct. The deliberate drinking of a known poisonous substance or under conditions which would raise a presumption to that effect will be considered willful misconduct. * * * Organic diseases and disabilities which are a secondary result of the chronic use of alcohol as a beverage, whether out of compulsion or otherwise, will not be considered of willful misconduct origin.

38 C.F.R. § 3.301(c)(2).

In practice, the VA interprets this regulation to provide a distinction between "primary" alcoholism, which does not result from an underlying psychiatric disorder, and "secondary" alcoholism, which does not result from such a disorder. The former is presumptively considered to be willful misconduct, while the latter is not.

Traynor applied to the VA for an extension of his benefit period on the ground that his alcoholism had prevented him from pursuing his education until he first applied to college. The VA denied his claim, stating in part that his "periods of hospitalization because of alcoholism are not for consideration, since they are a result of the veteran's own willful misconduct."

Plaintiff appealed the VA's decision to the Board of Veterans Appeals ("board"), contending that the VA's presumptive characterization of his primary alcoholism as "willful misconduct" was "wrong in fact

and in law". After a hearing, the board affirmed the initial decision, and on reconsideration, confirmed its own determination.

Having exhausted his administrative remedies, Traynor filed this action in the district court seeking monetary and injunctive relief as well as a declaratory judgment that as interpreted and applied the regulation violated the Rehabilitation Act of 1973 and the fifth amendment to the United States Constitution. The district court held (1) that it had jurisdiction over the action, and (2) that while the regulation withstood constitutional scrutiny, it violated the Rehabilitation Act's prohibition against discrimination based on an individual's handicap, 29 U.S.C. § 794. The district court therefore remanded Traynor's application for an extension of time to the VA. The VA and the VA administrator appealed.

## DISCUSSION

The VA asserts that 38 U.S.C. § 211(a) bars any judicial review of the board's decision and deprives this court of jurisdiction over the statutory issues presented. Section 211(a) provides, in relevant part, that:

the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans * * * shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision * * *.

The VA interprets this section broadly to preclude judicial review of all nonconstitutional challenges relating to its decisions on benefits. *See Walters v. National Association of Radiation Survivors,* —— U.S. ——, 105 S.Ct. 3180, 3182, 87 L.Ed.2d 220 (1985) ("[j]udicial review of VA decisions is precluded by statute"); *Pappanikoloaou v. Administrator of the Veterans Administration,* 762 F.2d 8, 9 (2d Cir.) ("[o]ne may not circumvent § 211(a) by seeking damages on a constitutional claim arising out of a denial of benefits"), *cert. denied,* —— U.S. ——, 106 S.Ct. 150, 88 L.Ed.2d 124

(1985); *accord Rosen v. Walters,* 719 F.2d 1422, 1424–25 (9th Cir.1983); *Anderson v. Veterans Administration,* 559 F.2d 935, 936 (5th Cir.1977); *Ross v. United States,* 462 F.2d 618, 619 (9th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 326, 34 L.Ed.2d 249 (1972); *Milliken v. Gleason,* 332 F.2d 122, 123 (1st Cir.1964), *cert. denied,* 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965).

Relying primarily on *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), Traynor contends that the jurisdictional limitation of section 211(a) should be interpreted narrowly in light of a basic presumption that judicial review is available absent clear and convincing evidence of congressional intent to the contrary. *Id.* at 373–74, 94 S.Ct. at 1168–69. In *Johnson,* the Supreme Court held that judicial review of the constitutionality of veterans' benefits regulations was not barred by section 211(a), *id.* at 361, 94 S.Ct. at 1160, and supported its conclusion with four reasons, *id.* at 366–68, 94 S.Ct. at 1165–66. First, construing section 211(a) to bar judicial review of constitutional claims would raise serious questions concerning the section's own constitutionality. Second, no explicit provision of section 211(a) bars judicial consideration of a veteran's constitutional claim. Third, the Court's construction of section 211(a) was supported by the VA's administrative practice, since the VA had previously expressly disclaimed authority to decide constitutional claims.

Fourth, the legislative history of section 211(a) did not demonstrate a congressional intent to bar judicial review of constitutional questions. Rather, that history revealed two primary purposes for the section: "(1) to insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation, and (2) to insure that the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions will be adequately and uniformly made." *Id.* at 370, 94 S.Ct. at 1167 (footnotes omitted). According to the *Johnson* Court, neither of these purposes

would be thwarted by giving the courts jurisdiction to review constitutional challenges to veterans' benefits decisions. Faced with these factors, the Court found, as to constitutional issues, an absence of "clear and convincing" evidence to overcome the presumption in favor of judicial review. *Id.* at 373–74, 94 S.Ct. at 1168–69.

Plaintiff seeks to extend *Johnson* to authorize statutory as well as constitutional challenges of VA decisions. His attempt, however, is misguided because, when viewed against the factors outlined by the *Johnson* Court, the circumstances in this case present "clear and convincing evidence" in favor of precluding judicial review of the VA's regulation and its application, in light of the Rehabilitation Act, to Traynor's alcoholism.

First, unlike the constitutional issue in *Johnson*, there is no inherent constitutional problem involved in congress's denying judicial review to the VA's refusal of an extension to plaintiff based on its interpretation and application of the alcoholism regulation. *See Gott v. Walters*, 756 F.2d 902, 912 n. 10 (D.C.Cir.), *vacated in banc*, 791 F.2d 172 (1985). The problem was simply one of applying the statute, through regulation and factfinding, to Traynor's particular case.

Second, while section 211(a) makes no reference to constitutional issues, it does purport to immunize from judicial review all decisions of the VA "on any question of law or fact", a phrase patently broad enough to encompass plaintiff's argument that the alcoholism regulation was unreasonably applied to his situation. In *Briscoe v. Bell*, 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977), the Court was faced with a similar question where a statute provided that determinations by census officials that a state was covered by the Voting Rights Act of 1965 "shall not be reviewable in any court". *Id.* at 407–08, 97 S.Ct. at 2430. The Court noted that such language "could hardly prohibit judicial review in more explicit terms", *id.* at 409, 97 S.Ct. at 2431, even though the question involved was a "pure[ly] legal" determina-

tion as to whether the federal officials had acted in excess of their statutory authority, *id.* at 408, 97 S.Ct. at 2430.

Third, while the VA has expressly disclaimed authority to review constitutional issues such as were involved in *Johnson*, it has never disclaimed its authority to determine whether its own regulations comply with federal statutes or whether they are properly applied to a particular case.

Finally, the available legislative history does point toward an intent by congress to bar judicial review of individual veteran's claims, such as this one, so as to avoid overburdening the federal courts and to preserve the VA's control over "the technical and complex determinations and applications of Veterans' Administration policy", *id.* 415 U.S. at 370, 94 S.Ct. at 1167, that congress has entrusted to it.

Given this clear congressional intent to bar judicial review of veterans' benefit claims, *see* H.R.Rep. No. 1166, 91st Cong.2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 3723, 3729–31, the concerns expressed in the dissent do not compel a different result. Arguing that section 504 is not administered by the VA, the dissent would, in effect, create a pocket of veterans—those handicapped within the meaning of section 504—for whom judicial review of benefit claims would be available despite section 211(a). It is undoubtedly true, as a practical matter, that many veterans have in the service of our country suffered injuries that qualify them as "handicapped individual[s]" for purposes of section 504. *See* 29 U.S.C. § 706(7). Despite this obvious reality, however, congress did not delineate any exception to section 211(a) for "handicapped" veterans when it passed section 504. Such congressional silence argues against any intent to grant to "handicapped" veterans the judicial review traditionally denied all other veterans. Far more likely, congress intended the VA to comply with section 504 when reaching a benefit determination for a veteran who is handicapped. In other words, as applied to veterans' benefits congress intended section 504 to be part of the

"law administered by the Veterans' Administration providing benefits for veterans". 38 U.S.C. § 211(a).

We recognize that some of the circuit courts disagree with our conclusion and have held that, under *Johnson,* section 211(a) does not divest federal courts of jurisdiction over challenges to the VA's authority to promulgate regulations. *See, e.g., Evergreen State College v. Cleland,* 621 F.2d 1002, 1008 (9th Cir.1980); *University of Maryland v. Cleland,* 621 F.2d 98, 100–01 (4th Cir.1980); *Merged Area X (Education) v. Cleland,* 604 F.2d 1075, 1077–78 (8th Cir.1979); *Wayne State University v. Cleland,* 590 F.2d 627, 631–32 (6th Cir. 1978). However, we do not regard these cases as controlling here.

We first note that these cases arose in a significantly different context from that of the instant case. They did not involve denials of benefits to particular veterans, but instead were broad challenges to the validity of a VA regulation brought by educational institutions interested in the overall administration of the VA educational benefits program. Second, three of the four cases gave no independent explanation for upholding federal court jurisdiction, but instead simply relied on the fourth case, *Wayne State.*

We also question the rationale behind these holdings. In determining that federal courts had jurisdiction over the challenges there presented, they placed primary reliance on only the fourth factor supporting the Supreme Court's decision in *Johnson,* concluding that allowing the courts to assert jurisdiction over such nonconstitutional claims would not overburden courts with expensive and time-consuming litigation nor would it involve them in technical and complex determinations better left to the VA in the interests of uniformity.

In fairness, the court in *Wayne State* did assert that (1) the legislative history of section 211(a) did not support the conclusion that congress intended to preclude judicial review of the VA's authority to promulgate regulations, and (2) that such a construction would raise serious doubts about the statute's constitutionality. 590 F.2d at 631–32. But we do not find these arguments convincing. First, our review of the legislative history cited by the court provides no clear support either in favor of or against such a construction, and second, as already indicated, we perceive no doubts about the statute's constitutionality arising from a construction that would permit the VA alone to determine whether its regulations carried out the intent of congress's enabling act. *See Briscoe v. Bell,* 432 U.S. 404, 408, 413–14, 97 S.Ct. 2428, 2430, 2433–34, 53 L.Ed.2d 439 (1977) (Supreme Court vacated decision of the court of appeals that found that "even where the intent of Congress was to preclude judicial review, a limited jurisdiction exists in the court to review actions which on their face are plainly in excess of statutory authority").

Moreover, *Wayne State* and the cases that have relied on it suffer from a fundamental weakness: they ignore the unambiguous language of section 211(a) itself. In most of the cases in which the Supreme Court has faced the question as to whether there was "clear and convincing" evidence of a congressional intent to bar judicial review of an administrative decision made under the authority of a statute, the language of the statute has lacked any expression of a clear intent to bar such judicial review. *See, e.g., Dunlop v. Bachowski,* 421 U.S. 560, 566, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975) (statute "contains no provision that explicitly prohibits judicial review" of the decision of the administrator); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) ("no indication that Congress sought to prohibit judicial review"); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) ("no explicit statutory authority for its argument that pre-enforcement review is unavailable"); *cf. Brownell v. We Shung,* 352 U.S. 180, 184–85, 77 S.Ct. 252, 255–56, 1 L.Ed.2d 225 (1956) (where statute provided that "decision of the Attorney General shall be fi-

nal", such decision subject to review under only certain circumstances). By contrast, we think that the language of section 211(a) itself provides clear and convincing evidence of congressional intent to bar judicial review of the type of claim raised by Traynor.

For similar reasons, we are not persuaded by those few courts, *McKelvey v. Walters*, 596 F.Supp. 1317 (D.D.C.1984), *appeal filed*, Docket No. 84–5910 (D.C.Cir. December 10, 1984); and *Tinch v. Walters*, 573 F.Supp. 346 (E.D.Tenn.1983), *aff'd*, 765 F.2d 599 (6th Cir.1985), that have relied on *Johnson* as a basis for exercising jurisdiction over the precise statutory claim raised by Traynor here. *McKelvey's* holding was premised on the rationale of *Wayne State*, 596 F.Supp. at 1320–21, which in our view is defective for the reasons already stated. In *Tinch*, the district court properly found jurisdiction to consider the plaintiff's constitutional claims, 573 F.Supp. at 347, but, after finding the constitutional claims meritless, the court proceeded for no explained reason to decide the statutory claim as well, *id.* at 348–49, and on appeal the sixth circuit affirmed without discussion of the jurisdictional problem, 765 F.2d at 601–04. Of course, since jurisdiction over meritless constitutional claims would not provide the court with jurisdiction over a statutory claim otherwise beyond its reviewing powers, *Tinch* stands on shaky ground, and we decline this opportunity to follow its lead.

## CONCLUSION

We conclude that 38 U.S.C. § 211(a) provides clear and convincing evidence of a congressional intent to bar judicial review of the type of claim raised by Traynor and that his complaint must therefore be dismissed. This conclusion makes it unnecessary, of course, to review Traynor's claim that the VA regulation on alcoholism violated section 504 of the Rehabilitation Act.

Reversed and remanded to the district court with a direction to dismiss the complaint for lack of jurisdiction.

KEARSE, Circuit Judge, dissenting:

I must respectfully dissent from the majority's ruling that the district court lacked jurisdiction to consider whether the regulations of the Veterans' Administration ("VA" or "Administrator") challenged by plaintiff Eugene Traynor violate § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982 & Supp. I 1983). For the reasons below, I would conclude that the court had jurisdiction to consider that claim.

Two areas of substantive law are involved in the claim that is principally at issue on this appeal. One, set out in 38 U.S.C. § 1662(a)(1) (1982 & Supp. I 1983) and a combination of VA regulations ("VA alcoholism regulations") found in 38 C.F.R. § 3.1(n) (1985), *id.* § 3.301(c)(2), and Administrator's Decision No. 988 (Aug. 13, 1964), governs the circumstances in which a veteran who at one time was disabled by alcoholism may be provided educational benefits for a period that extends beyond the tenth anniversary of his discharge from the armed services. The other, § 504 of the Rehabilitation Act, forbids the withholding of benefits in, *inter alia*, a program conducted by a federal agency such as the VA, to "otherwise qualified" handicapped individuals solely by reason of their handicaps.

Two jurisdictional statutes are at issue. First, the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* (1982 & Supp. II 1984), gives the federal court jurisdiction to hear the claims of a "person suffering legal wrong ... or adversely affected or aggrieved by [final or otherwise reviewable] agency action ... within the meaning of a relevant statute," *id.* § 702, so long as there are no "statutes preclud[ing] judicial review," *id.* § 701(a)(1). The other jurisdictional statute is 38 U.S.C. § 211(a) (1982), which the majority concludes is a statute precluding judicial review of the claim that the challenged VA regulations violate § 504 of the Rehabilitation Act. I disagree with this conclusion.

Section 211(a) provides, in pertinent part, that

the decisions of the Administrator on any question of law or fact under any law

administered by the Veterans' Administration providing benefits for veterans ... shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision....

38 U.S.C. § 211(a). The principal question of law presented here is whether the VA alcoholism regulations denying so-called "primary" alcoholics extended educational benefits violate § 504 of the Rehabilitation Act. For two reasons I conclude that § 211(a) does not deprive the courts of jurisdiction to entertain this question. First, this question is not one that arises under a law that is administered by the VA or that provides benefits for veterans; rather it arises under the Rehabilitation Act, which does not provide veterans' benefits and is not administered by the VA. Second, the Administrator did not in fact decide this question but rather disclaimed jurisdiction to decide it.

In construing § 211(a) as depriving the court of jurisdiction to entertain Traynor's challenge to the VA alcoholism regulations as violative of the Rehabilitation Act, the majority apparently focuses only on the statutory phrase "on any question of law or fact" and ignores its ensuing modifier. By its terms, however, the section immunizes from judicial review not all "decisions of the VA 'on any question of law or fact,'" see Majority Opinion *ante* at 229, but only decisions of the VA on a "question of law or fact *under any law administered by the Veterans' Administration providing benefits for veterans*," 38 U.S.C. § 211(a) (emphasis added). Thus, as I read § 211(a), it deprives the courts of jurisdiction to review the Administrator's rulings of law only if they were made under a law that (a) is administered by the VA and (b) provides benefits for veterans.

At the outset of Traynor's quest for an extended period of educational benefits there were, of course, many questions before the VA: (1) whether Traynor had been disabled by reason of his alcoholism; (2) whether that alcoholism was "primary" within the meaning of the VA regulations;

(3) whether such primary alcoholism constituted "willful" misconduct within the meaning of the VA regulations; and (4) assuming affirmative answers to the first three questions, whether it is permissible under the Rehabilitation Act for the VA regulations to deny the requested educational benefits to those classified under VA regulations as primary alcoholics. The first three of these questions plainly were questions of fact or law arising under the laws that are administered by the VA and that provide benefits for veterans; as to those questions, § 211(a) denies the court jurisdiction to review the Administrator's decision.

The last question, however, called for a decision under the Rehabilitation Act. "A decision of law or fact 'under' a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts." *Johnson v. Robison*, 415 U.S. 361, 367, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974). Traynor's Rehabilitation Act challenge involved the facts (1) that 38 U.S.C. § 1662(a)(1) denies extended educational benefits to a veteran whose disability resulted from his own willful misconduct, and (2) that the VA alcoholism regulations provide that primary alcoholism is willful misconduct and that primary alcoholics are *ipso facto* to be denied extended educational benefits. The challenge required a decision as to whether the Rehabilitation Act prohibits this combination of facts—*i.e.*, a decision under the Rehabilitation Act.

The Rehabilitation Act does not provide benefits to veterans. Nor is it administered by the VA. The majority appears to dispute this, but in so doing it confuses administration with compliance. The fact that the VA is itself required to comply with a statute that governs its operations does not mean that it administers that statute. The VA is also required to comply with the Constitution; it does not thereby "administer" the Constitution. In fact the agency responsible for administering the Rehabilitation Act is HHS. In 1976, the Department of Health, Education, and Wel-

fare (now HHS) was designated the leading agency to promulgate regulations implementing § 504; other federal agencies were directed to make their rules, regulations, and directives consistent with the standards and procedures established by HHS. *See* Exec.Order No. 11,914, 3 C.F.R. 117 (1977) ("The Secretary [of HHS] shall establish standards for determining who are handicapped individuals and guidelines for determining what are discriminatory practices, within the meaning of section 504."). Thus, a decision by the Administrator as to whether VA regulations violate the Rehabilitation Act—*i.e.,* a decision under a law that does not provide veterans' benefits and is not administered by the VA—is not within the category of decisions that § 211(a) places beyond judicial review.

Further, it appears to me that the Administrator has declined even to render a decision on the question of whether the VA alcoholism regulations violate the Rehabilitation Act. The majority's statement that "the VA ... has never disclaimed its authority to determine whether its own regulations comply with federal statutes," Majority Opinion *ante* at 229, is belied by the record. In Traynor's appeal to the Board of Veterans Appeals ("Board"), he explicitly contended that the VA alcoholism regulations were forbidden by the Rehabilitation Act. In denying Traynor's claim on reconsideration, the Board noted that Traynor had challenged the validity of the regulations under the Constitution, under 38 U.S.C. § 1662, and under other statutes. The Board concluded, however (consistent with 38 U.S.C. § 4004(c) (1982)), that it was "bound in its decisions not only by instructions of the Administrator of Veterans Affairs but also by the regulations of the Veterans Administration." This amounted to a disclaimer of authority to determine whether the VA alcoholism regulations violated other federal laws, a disclaimer also made several times in the colloquy at the Board hearing on Traynor's request for reconsideration of the denial of his claim, which included the following statement by a member of the Board to Traynor's counsel:

You've made a very eloquent argument and—but you're asking us right now, in certain respects, to judge the regulations, to act as a court and you're asking us to do a few things that we are incompetent to do. To be under—I don't mean incompetent, we just don't have—we're incompetent in that jurisdiction.

The Board's decision is the final decision of the Administrator, *see* 38 U.S.C. §§ 4004(a) and (b) (1982). Thus, the record makes clear that the Administrator refused, on the ground of lack of authority, to decide whether the challenged regulations violated the Rehabilitation Act.

Finally, I would note my disagreement with the majority's characterization of Traynor's claim as a narrow one focusing solely on the technical complexities of the veterans' benefits laws as they apply to his particular claim for benefits. *See* Majority Opinion *ante* at 229. The thrust of Traynor's challenge to the validity of the VA alcoholism regulations is a general one, of apparently widespread practical application. Although the suit was not brought as a class action, the complaint requests a declaratory judgment that the VA alcoholism regulations violate the Rehabilitation Act. This is a challenge that, if upheld, would result in changes having general application. And, as a Board member noted at Traynor's hearing, "this is not an isolated case. It's a continuing problem."

In sum, I think it plain that Traynor's challenge to the VA regulations on alcoholism raised a question under the Rehabilitation Act, a question on which he is entitled to a decision. Both because the Administrator disclaimed jurisdiction to decide it and because a decision would not have been one under a law providing veterans' benefits and administered by the VA, I would conclude that the district court had jurisdiction to entertain this challenge.

Since the majority reverses the judgment on jurisdictional grounds, I express no view as to the merits of Traynor's claim under the Rehabilitation Act.