**James P. McKELVEY**

v.

**Thomas K. TURNAGE, Administrator of Veterans' Affairs, and Veterans' Administration, Appellants.**

No. 84–5910.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 26, 1985.

Decided May 30, 1986.

Robert V. Zener, Atty., U.S. Dept. of Justice, with whom Richard K. Willard, former Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Anthony J. Steinmeyer, Atty., U.S. Dept. of Justice, Washington, D.C., were on brief, for appellants.

Kenneth A. Teel, with whom Douglas E. Winter, Arthur B. Spitzer and Elizabeth Symonds, Washington, D.C., were on brief, for appellee.

Before: GINSBURG, SCALIA and STARR, Circuit Judges.

Opinion concurring in part and dissenting in part filed by Circuit Judge GINSBURG.

Opinion concurring in part and dissenting in part filed by Circuit Judge SCALIA.

PER CURIAM:

Federal law provides honorably discharged veterans with certain educational assistance benefits, *see* 38 U.S.C. § 1661(a) (1982), which must be used within ten years of discharge from the armed services, *see* 38 U.S.C. § 1662(a)(1). However, an extension of the limitation period is given to any veteran who is unable to use his educational benefits within ten years "because of a physical or mental disability which was not the result of such veteran's own willful misconduct." *Id.* Appellee James P. McKelvey successfully argued before the District Court that the Veterans' Administration violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982), in determining that his disability of alcoholism was attributable to his own "willful misconduct" and that he was therefore ineligible for an extension of the limitation period. *See McKelvey v. Walters,* 596 F.Supp. 1317, 1323–24 (D.D.C.1984). Two issues are presented by the VA's appeal: Does 38 U.S.C. § 211(a) (1982) deprive us of jurisdiction to review the VA's decision? If not, has the VA violated the Rehabilitation Act in determining that all alcoholism (except that which is the result of an acquired psychiatric disorder) is caused by "willful misconduct" within the meaning of the exception to the limitation extension?

I

A

The G.I. Bill has for many years granted to each honorably discharged veteran certain educational assistance benefits which must be used in the ten years following the veteran's last discharge or release from active duty. *See* 38 U.S.C. §§ 1661(a), 1662(a)(1). In 1977, Congress amended the statute to extend the limitation period for those veterans who were unable to use their educational benefits during that period "because of a physical or mental disability which was not the result of [their] own willful misconduct." Pub.L.No. 95–202, tit. II, § 203(a)(1), 91 Stat. 1433, 1439 (1977) (codified at 38 U.S.C. § 1662(a)(1) (1982) ). The "willful misconduct" qualification was not a new concept; the same limitation was already contained in a number of previously enacted veterans benefit provisions. *See*

38 U.S.C. § 105 (definition of injury or disease occurring "in line of duty"); 38 U.S.C. § 310 (disability compensation for injuries suffered or diseases contracted "in line of duty"); 38 U.S.C. § 410 (dependency and indemnity compensation); 38 U.S.C. § 521 (non-service connected disability payments).

The VA regulations and interpretations which the VA applied in the present case are the same as those in effect when the 1977 provision was enacted. The regulations define "willful misconduct" in general as "an act involving conscious wrongdoing or known prohibited action.... It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences." 38 C.F.R. § 3.1(n)(l) (1985). With respect to alcoholism in particular the regulations provide:

> (2) *Alcoholism.* The simple drinking of alcoholic beverage is not of itself willful misconduct. The deliberate drinking of a known poisonous substance or under conditions which would raise a presumption to that effect will be considered willful misconduct. If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results approximately [*sic*] and immediately in disability or death, the disability or death will be considered the result of the person's willful misconduct. Organic diseases and disabilities which are a secondary result of the chronic use of alcohol as a beverage, whether out of compulsion or otherwise, will not be considered of willful misconduct origin.

38 C.F.R. § 3.301(c)(2) (1985). The VA's longstanding interpretation of these provisions is that the disease of alcoholism is a result of willful misconduct unless it is "secondary to and a manifestation of an acquired psychiatric disorder." Administrator's Decision, Veterans' Administration No. 988, *Interpretation of the Term "Willful Misconduct" as Related to the Residuals of Chronic Alcoholism* at 1 (Aug. 13, 1964). The type of alcoholism regarded by the VA as not the result of willful misconduct is referred to as "secondary," while willful alcoholism is labeled "primary."

*See id.* The VA treats drug addiction substantially the same as alcoholism. *See* 38 C.F.R. § 3.301(c)(3).

### B

McKelvey served on active duty with the United States Army from September 1963 to September 1966. In the nine-year period following his discharge, McKelvey was hospitalized repeatedly for alcoholism and associated problems. He has not had a drink since May 10, 1975.

In November of 1977, more than ten years after his discharge, McKelvey applied for educational assistance benefits, asserting that his alcoholism had prevented him from using the benefits earlier. The VA denied the application. On review before the Board of Veterans Appeals, McKelvey attempted to prove that his alcoholism was "secondary," but the Board found "no evidence that an acquired psychiatric disease preceded [McKelvey's] alcoholism." *In the Appeal of James P. McKelvey,* No. 79–04 991, Findings and Decision at 6 (Aug. 6, 1980) ("1980 Decision"). As the VA regulations required it to do in the absence of such evidence, the Board sustained the determination that McKelvey's alcoholism was "willful" and that McKelvey was therefore not entitled to an extension.

McKelvey filed suit in the District Court for the District of Columbia, asserting that the willful misconduct regulation (38 C.F.R. § 3.301(c)(2)) was arbitrary and outside of the VA's statutory authority; that the VA's treatment of alcoholism was illegal under § 504 of the Rehabilitation Act; and that he had been denied his rights under the due process and equal protection clauses of the fifth amendment. The District Court, after concluding that 38 U.S.C. § 211(a) did not bar review of the VA's action, *see McKelvey,* 596 F.Supp. at 1320–21, held that § 3.301(c)(2) represented an entirely reasonable construction of the "willful misconduct" provision of 38 U.S.C. § 1662(a)(1), *see id.* at 1321–23, but that it violated § 504 of the Rehabilitation Act by discriminating on the basis of the handicap

of primary alcoholism. The regulation would be lawful, it said, if the government could show a "substantial justification" for the discrimination. *Id.* at 1324. The court found the government's asserted justification that primary alcoholism "is a voluntary handicap" to be "superficially plausible," but rejected it on the belief that under § 3.301(c)(2) primary alcoholism is deemed *in*voluntary (*i.e.*, is classified as secondary alcoholism) once it results in further disability. *Id.* The Court invalidated 38 C.F.R. § 3.301(c)(2) and ordered the VA to determine anew whether McKelvey suffered a disability attributable to his own willful misconduct within the meaning of 38 U.S.C. § 1662(a)(1). *Id.* at 1325. The VA appeals.

## II

■ 38 U.S.C. 211(a), in pertinent part, provides:

> [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

This court has not yet reached a definitive decision on the breadth of this no-review provision.[1] Because of the unusual, perhaps *sui generis*, posture of this case, we need not and do not essay such a decision today. Rather, we hold that § 211(a) does not preclude review in the unusual situation present here: the VA itself had never decided the question McKelvey's Rehabilitation Act plea raises until that question was posed for adjudication before this court.

Section 211(a)'s preclusion of review depends, at a minimum, on the satisfaction of this condition: the petitioner's claim must have been resolved by an actual "decision of the Administrator." *See Johnson v. Robison*, 415 U.S. 361, 367, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974). At the time of the initiation of this suit, the Administrator had made no decision concerning the impact of the Rehabilitation Act on McKelvey's time extension application. Therefore, in its initial brief on appeal to this court, the VA maintained that § 211 did not block review. Specifically, the VA told us:

> McKelvey did not make a Rehabilitation Act claim before the Board of Veterans Appeals; and it is not clear that the Board would have had authority to consider such a claim had he made it. We do not read 38 U.S.C. § 211(a) to preclude judicial review of a point that the Veterans Administration never considered and, under existing regulations, probably had no authority to consider.

Brief for Appellants at 9–10 n. 1.

At oral argument this court, on its own motion, invited the parties to submit supplemental briefs on three questions: whether the VA had authority to consider the Rehabilitation Act claim; if it did, what was the impact of that Act on McKelvey's time extension application; and whether § 211(a) precluded this court from undertaking judicial review in this case. Re-

---

1. In *Carter v. Cleland,* 643 F.2d 1 (D.C.Cir.1980), this circuit held unreviewable sufficiency of evidence questions, *id.* at 7, and interpretive guidelines, *id.* at 8, but reserved judgment on when courts could review regulations or decisions made under a statute other than the veterans benefits laws. In *Kirkhuff v. Nimmo,* 683 F.2d 544, 547–48 (D.C.Cir.1982), the court surveyed recent judicial interpretations of § 211(a) but declined to resolve "this difficult question"; instead, the court ruled against the claimant on the merits. In *Gott v. Walters,* 756 F.2d 902, 907 (D.C.Cir.1985), over a strong dissent, a panel of this court held that every decision made by the

Administrator "in the course of a determination under the veterans benefit laws" was unreviewable under § 211(a). The circuit vacated that decision upon voting to rehear the appeal en banc, but the case was dismissed as moot in advance of the scheduled full court review.

A divided panel of the Second Circuit, in a case involving the same Rehabilitation Act plea as the one presented here, held § 211(a) a bar to judicial review. *Traynor v. Walters,* 791 F.2d 226 (2d Cir. 1986). *Traynor* cites as in accord our panel decision in *Gott* without noting the vacation of that decision.

sponding to our request, the VA asserted that it does have the authority to consider the effect of the Rehabilitation Act on McKelvey's time extension application. The VA's supplemental brief featured a letter composed in light of the court's inquiries by the General Counsel of the VA. The General Counsel's letter announced for the first time the VA's official position: the Rehabilitation Act does not invalidate the view that "primary" alcoholism is in all cases "willful misconduct." This letter, the VA ultimately argues, fundamentally changes the situation in the present case. The VA has now spoken, it has made a decision on the point of law on which McKelvey's case turns. Because the element earlier missing has lately been supplied, the VA concludes, § 211(a) now leaps into play to bar review of the VA decision just made. *See* Supplemental Brief for Appellants at 5.

This "switched off, then on" interpretation of § 211(a) would place the VA in a remarkable position. The interpretation would allow the VA to try out judicial review risk free. The agency could allow a challenge to its action to proceed in the district court secure in the knowledge that if the VA lost there, it could retroactively shield the action from judicial review.

Under the VA's interpretation, § 211(a) did not bar review on July 19, 1983, when McKelvey filed his Rehabilitation Act-grounded claim with the district court, because the VA had made no decision concerning that Act at that time; nor did the statute bar review on October 19, 1984, when the district court issued its judgment against the VA; nor on December 30, 1984, when the VA chose to appeal that judgment; nor even on November 26, 1985, when, after full briefing by both parties, this court heard oral argument on the VA's appeal. But throughout this two and one-half year judicial proceeding, the VA now argues, it has held a trump card up its sleeve: even after the parties and two courts have expended the resources necessary for full and fair litigation, the VA, simply by releasing an official pronouncement on the matter *sub judice*, can preempt the judicial process, and convert the District Court's judgment into a declaration that merely advises, but does not control the agency.

■ We are confident that Congress never envisioned such a gambit when it provided that veterans benefits claims should start and finish at the administrative level without coming to court at all. Section 211(a)'s application is to be determined firmly and finally as of the date that plaintiff commences litigation, so that a district court may issue a judgment that will not later be set aside by an executive agency's fiat. By the VA's own admission, because it had left a potentially dispositive question undecided, § 211(a) did not bar court adjudication when McKelvey lodged his claim in this case. We therefore have jurisdiction to hear this appeal.

We emphasize, however, the narrowness of our holding. We do not, for example, pass on whether § 211(a) precludes review of veterans' benefit regulations to determine whether they exceed the VA's statutory authority. *Cf. Wayne State University v. Cleland*, 590 F.2d 627, 632 (6th Cir. 1978) (no preclusion); *University of Maryland v. Cleland*, 621 F.2d 98 (4th Cir.1980) (same); *Evergreen State College v. Cleland*, 621 F.2d 1002 (9th Cir.1980) (same); *Merged Area X (Education) v. Cleland*, 604 F.2d 1075 (8th Cir.1979) (same). Indeed, we do not anticipate another occasion to review a VA order on the basis that supports our review today. The VA has now determined it does have authority to decide on the effect and applicability of federal statutes other than veterans' legislation when the agency acts on benefits claims. We therefore expect that the VA will not again regard as outside the arsenal of law it applies any potentially relevant congressional enactment.

### III

■ We can dispose of one of the government's points on appeal summarily. It was not until 1978—one year after Congress enacted the extension of the ten-year

limitation period that is the subject of this suit—that the Rehabilitation Act was amended to make § 504 applicable to federal agencies in the administration of programs of financial assistance. *See* Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub.L. No. 95–602, § 119, 92 Stat. 2955, 2982. Since that 1978 amendment, the Senate has on four occasions passed bills to provide that alcoholism shall not be considered "willful misconduct" for the purposes of 38 U.S.C. § 1662(a)(1). None of the bills passed the House. *See* S.REP. NO. 604, 98th Cong., 2d Sess. 39 (1984), U.S.Code Cong. & Admin.News 1984, pp. 4479, 4503. The VA argues that this "subsequent legislative history" proves that § 504 does not prevent it from treating most alcoholism as willful misconduct. As the Supreme Court and this court have repeatedly remarked, the views of later Congresses as to the meaning of enactments by their predecessors are of very little, if any, significance. *See United States v. Clark*, 445 U.S. 23, 33 n. 9, 100 S.Ct. 895, 902 n. 9, 63 L.Ed.2d 171 (1980); *United States v. Southwestern Cable Co.*, 392 U.S. 157, 170, 88 S.Ct. 1994, 2001, 20 L.Ed.2d 1001 (1968); *Rainwater v. United States*, 356 U.S. 590, 593–94, 78 S.Ct. 946, 949, 2 L.Ed.2d 996 (1958); *AFGE, Locals 225, et al. v. FLRA*, 712 F.2d 640, 647 & n. 29 (D.C.Cir.1983).

We have considerable difficulty, however, understanding why § 504 is by its terms applicable here. It provides as follows:

No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program

or activity conducted by any Executive agency....

29 U.S.C. § 794. According to McKelvey, and the District Court, the VA has discriminated against McKelvey "solely by reason of his handicap" within the meaning of this provision. McKelvey concedes that a regulation would not violate § 504 if it granted a particular benefit (such as an extension from an otherwise applicable limitation period) to all or a particular class of handicapped individuals, but excluded those whose handicap resulted from their own willful misconduct. The "discrimination" under such a scheme would be on the basis of *conduct,* not on the basis of handicap. Presumably, then, McKelvey would not object to a VA regulation that stated nothing more than, "Those alcoholics whose alcoholism is attributable to their own willful misconduct are ineligible for educational benefits extensions." Such a regulation would do no more than restate, in the context of the particular handicap of alcoholism, the concededly valid distinction made in 38 U.S.C. § 1662(a)(1).

■ The essence of McKelvey's § 504 claim, therefore, is disagreement with the VA's conclusion that primary alcoholics— *i.e.,* those alcoholics whose condition is not the result of an acquired psychiatric disease—suffer from a willfully caused handicap. It seems to us, however, that the agency's conclusion is a reasonable one, which is all that is needed to sustain it.[2] "At the time of the enactment of 38 U.S.C. § 1662 in 1977, there was, and even presently there is, much controversy as to the nature and cause of alcoholism." *Burns v. Nimmo,* 545 F.Supp. 544, 546 (N.D.Iowa 1982). McKelvey asserts that "[t]he medical world has recognized that alcohol abuse is generally outside of the individual's control," Brief for Appellee at 5 n. 1; but the VA points to a substantial body of medical

**2.** We note in passing that McKelvey's claims assert discrimination between various categories of handicapped individuals (those who are granted the limitation extension and primary alcoholics, who are not) rather than between handicapped individuals and others. At least one other court of appeals has expressed "seri-

ous doubts whether Congress intended § 504 to provide plaintiffs with a claim for discrimination vis-a-vis other handicapped individuals." *Colin K. v. Schmidt,* 715 F.2d 1, 9 (1st Cir.1983). The manner of our disposition renders it unnecessary to address that point.

literature that even contests the proposition that alcoholism is a disease, much less that it is a disease for which the victim bears no responsibility, *see* Brief for Appellants at 18–19 n. 4. Even on the basis of medical opinion alone, it seems to us the agency's position has the necessary minimum support. But it is in any case seriously doubtful whether the statutory test of "willful misconduct"—any more than the test for insanity in criminal prosecutions, *see United States v. Brawner,* 471 F.2d 969, 981–83 (D.C.Cir.1972) (en banc)—calls for invocation of a medical judgment as opposed to application of general societal perceptions regarding personal responsibility. On the basis of the latter criterion, we would find it impossible to deem unreasonable the VA's assessment that only a psychiatric disorder can prevent alcoholism from being the consequence of "willful misconduct." It is suggestive of general societal perceptions that the Veterans' Affairs Committee of the Senate (to take a particularly pertinent example of societal attitudes) expressed the belief that alcoholism and drug addiction "are to some extent within [the veteran's] control," S.

REP. No. 314, 96th Cong., 1st Sess. 26 (1979). It is immaterial whether or not such attitudes are correct; the point is that it was within the bounds of reasonable interpretation of the statute for the agency to reflect them. The consequence of McKelvey's interpretation, it should be noted, is not merely to make the limitation extension available to a person who has brought his alcoholism under control; but to make monetary benefits payable to alcoholics who show no sign of, and have no intention of, improving their condition.[3] In sum: It is initially the VA's responsibility, and not ours, to determine what is "willful misconduct." We cannot say that the resolution here is unsupported by substantial evidence or otherwise arbitrary. We conclude, therefore, that since the agency's application of 38 C.F.R. § 3.301(c)(2) is a permissible means of discriminating among those suffering from alcoholism on the basis of their *conduct,* McKelvey's § 504 claim is without merit.

The contrary conclusion of the District Court is based on several erroneous premises.[4] The court held that "the willful mis-

---

3. As noted earlier, *supra* page 196, veterans benefit statutes authorizing death and disability compensation, disability pensions, and dependency and indemnity benefits preclude payment of such benefits when it is determined that the death or disabling injury or disease resulted from the veteran's own "willful misconduct." There is no basis for giving the term a different meaning in the limitation extension than in the other portions of the same statutory scheme. Even if legislative history might be thought capable of justifying such a strange result, the legislative history of the 1977 limitation extension makes it clear that in determining "willful misconduct" "the same standards [are to] be applied as are utilized in determining eligibility for other VA programs under title 38." S.REP. No. 468, 95th Cong., 1st Sess. 69–70 (1977).

The original regulations issued by HEW in implementing the Rehabilitation Act, *see infra* note 5, included the following provision, 45 C.F.R. § 85.51(c) (1978) (codified as redesignated at 28 C.F.R. § 41.51(c) (1985)): "The exclusion of ... a specific class of handicapped persons from a program limited by federal statute or executive order to a different class of handicapped persons is not prohibited by [the Act]." The dissent argues that since the veterans disability compensation programs are limited by federal statute to veterans with disabilities not

attributable to "willful misconduct," while the educational benefits program is available to *all* honorably discharged veterans, pursuant to this regulation the Rehabilitation Act requires alteration of the VA's definition of alcoholism and drug abuse for the latter purpose but not for the former. Even if the distinction drawn by the HEW regulation is sound, however, it has no proper application to the present case. McKelvey is objecting to discriminatory application, not of the general, ten-year educational benefits program, but of the limitation period extension, which *is* "limited by federal statute ... to a [specific] class of handicapped persons" in precisely the same fashion as the disability compensation programs.

4. Only one federal court of appeals has considered the lawfulness of 38 C.F.R. § 3.301(c)(2) in light of § 504 of the Rehabilitation Act. In *Tinch v. Walters,* 765 F.2d 599 (6th Cir.1985), the court devoted only three paragraphs to the issue (excluding its discussion of legislative history), and, in reasoning that tracked that of the District Court in this case almost sentence-by-sentence, held the regulation unlawful. *See id.* at 603–04. In discussing our disagreement with the District Court, we will at the same time be indicating why we cannot agree with the decision of the Sixth Circuit.

conduct regulation discriminates against McKelvey on the basis of his handicap: primary alcoholism." *McKelvey*, 596 F.Supp. at 1323. But in the VA's terminological scheme, "primary" is merely another way of saying "willful." "Primary alcoholism" is not a distinct handicap; "primary" and "secondary" are labels the VA uses to express its *conclusion* about which of those suffering from the single handicap of alcoholism[5] do so because of their own willful misconduct. Under the District Court's reasoning, the VA could not lawfully deny extensions to veterans paralyzed because of their reckless driving because to do so would be to discriminate on the basis of the "handicap" of "willful paralysis." It is certainly true that primary (or willful) alcoholics are discriminated against, but that discrimination is based upon conduct, not upon a distinct "handicap" called "primary alcoholism."

The District Court further objected that "[t]he Board's interpretation of the regulation precluded it from considering relevant evidence which was causally related to [McKelvey's] handicap." *McKelvey*, 596 F.Supp. at 1323. In the District Court's view, such "relevant evidence" included the age at which McKelvey started drinking and evidence that his father and brother were alcoholics. But, as we have held above, the VA has reasonably determined that such evidence is *not* "relevant" to the issue of whether a particular veteran's alcoholism is attributable to willful misconduct. The questions so effortlessly decided by the District Court are the subject of controversy within the field of medicine and within what might be termed the arena of popular moral philosophy. The VA, in a reasonable exercise of its discretion, embraced the views of one side in

those controversies. The District Court acted improperly in substituting its own judgment.

Finally, the District Court found that *all* alcoholics were discriminated against because those suffering from other handicaps "unlike alcoholics, are not required to prove the existence of a secondary disease in order to escape a finding of willful misconduct with respect to their primary condition." *McKelvey*, 596 F.Supp. at 1324. That conclusion was based upon the District Court's belief that, once primary alcoholism results in a secondary disability (*e.g.*, cirrhosis), not only does the VA not consider the secondary disability to have been caused by "willful misconduct," but it also reclassifies the primary alcoholism as secondary—*i.e.*, not caused by willful misconduct. The latter part of this belief is simply wrong. Disabilities that result from primary alcoholism are not deemed a product of "willful misconduct," but the alcoholism which caused them *is*. This is clear not only from the text of § 3.301(c)(2) but from the opinions of the Board of Veterans Appeals. *See* 1980 Decision at 6; *In the Appeal of James P. McKelvey*, No. 79–04 991, Findings and Decision (Reconsideration) at 4 (Feb. 23, 1982). Thus, alcoholics, just like every other handicapped veteran, are merely required to prove that their disability is not attributable to willful misconduct.

It might be argued, however, that even if McKelvey has not been discriminated against in the application of substantive criteria, he has suffered "procedural" discrimination. Unlike those suffering from every other handicap (except drug addiction), alcoholics do not receive completely "individualized" consideration

5. Shortly after enactment of § 504, the Secretary of the Department of Health, Education and Welfare—the agency charged by the President with responsibility for determining who are "handicapped individuals" within the meaning of 29 U.S.C. § 706(6) (1976) (codified as amended at 29 U.S.C. § 706(7)(B) (1982))—asked the Attorney General for his opinion on whether *alcoholics* are handicapped for purposes of the Rehabilitation Act. The Attorney General responded affirmatively. *See* 43 Op.Att'y Gen. No. 12 (Apr. 12, 1977). HEW then issued guidelines reflecting that conclusion, *see* 43 Fed.Reg. 2132, 2137 (1978), and the VA adopted those guidelines by regulation, 45 Fed.Reg. 63,264, 63,269 (1980) (codified at 38 C.F.R. § 18.403(j)(2)(i)(C) (1985)). In all cases, reference was made to the singular handicap of "alcoholism"; at no time was it suggested that distinct handicaps of "primary" and "secondary" alcoholism exist.

of whether their handicap resulted from willful misconduct. Instead, the VA has established an irrebutable presumption that all persons suffering from this particular handicap do so as a result of their own misconduct, unless they can prove an underlying psychiatric disability. We think such a claim of "procedural" discrimination must fail. Disparate treatment does not necessarily constitute the invidious "discrimination" outlawed by the Rehabilitation Act; disparate treatment that has a substantial justification is lawful. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 612 F.2d 644, 649–50 (2d Cir.1979); *Pinkerton v. Moye,* 509 F.Supp. 107, 114 (W.D.Va.1981). Were the VA to promulgate a regulation requiring those claiming paralysis to submit to medical examination, but not requiring such examination for those claiming disability on the basis of loss of limbs, it would be absurd to think that the Rehabilitation Act was violated. It is no discrimination, in other words, to establish for various disabilities the sorts of procedures that are distinctively appropriate. Alcoholism, unlike any other disability except drug addiction (which has been subjected to the same procedural presumption), is self-inflicted—whether or not the self-infliction can be considered "willful." It is therefore feasible for alcoholism, as it is not for all other disabilities except drug addiction, to make a generalized determination that willfulness exists unless there is established the singular exculpation for self-infliction (psychiatric disorder) that the agency has chosen to acknowledge. Since we have approved the substance of that determination, it would insult common sense to require the agency to make it repetitiously, by consistently denying non-psychiatric defenses in individual adjudications instead of precluding them generically, as it has, by rulemaking. *Cf. NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 290–95, 94 S.Ct. 1757, 1769–72, 40 L.Ed.2d 134 (1974); *SEC v. Chenery Corp.,*

332 U.S. 194, 202–03, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947).

\* \* \* \* \* \*

The decision of the District Court is reversed and the case is remanded for consideration of McKelvey's constitutional claims.

*So ordered.*

GINSBURG, Circuit Judge, concurring in part and dissenting in part:

I agree, for the reasons stated in Section II of the per curiam opinion, that we have jurisdiction over this appeal; on the merits, I dissent from the majority's position that the Rehabilitation Act does not invalidate the challenged application of the "willful misconduct" regulation. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits governmental discrimination on the basis of handicap; authoritative regulations establish that alcoholism is a handicap; and solely because McKelvey is an alcoholic, the Veterans' Administration (VA) refused to consider relevant evidence that McKelvey's delay in collecting benefits was not attributable to "willful misconduct." Yet the majority concludes that the VA's denial of McKelvey's request for an extension does not violate Section 504 because the VA may simply reclassify alcoholism as "conduct" rather than a "handicap" and thus discriminate on the basis of conduct, not handicap. This view of Section 504 would evade that provision's proscription, and the majority's alignment with the VA's reasoning puts this circuit squarely in conflict with a sister circuit. *Tinch v. Walters,* 765 F.2d 599 (6th Cir.1985), *affirming* 573 F.Supp. 346 (E.D.Tenn.1983).[1]

A. *The Rehabilitation Act:* Section 504 of the Rehabilitation Act provides in pertinent part: "No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, ... be subjected to discrimination ... under any program or activity conducted by any Executive agency." To establish discrimination under this

---

1. The only other federal court that has thus far addressed the issue agreed with the adjudication in our district court and in the Sixth Circuit, *see Traynor v. Walters,* 606 F.Supp. 391 (S.D.N.Y. 1985), but the district court decision in *Traynor* was reversed when a divided Second Circuit panel found judicial review precluded. *Traynor v. Walters,* 791 F.2d 226 (2d Cir. 1986).

provision, a plaintiff must demonstrate four elements: (1) he is a "handicapped individual" under the Act; (2) he is "otherwise qualified" for the program of benefits from which he has been excluded; (3) he has been excluded "solely" because of his handicap; and (4) the program from which he has been excluded is subject to Section 504. *See, e.g., Doe v. New York University,* 666 F.2d 761, 774–75 (2d Cir.1981).

McKelvey has unproblematically established the elements designated (1) and (4) in the above enumeration. As to element (4), the VA regulations themselves list the educational benefits program as one subject to Section 504, *see* 38 C.F.R. § 18, Appendix A to Subpart D, and defendants do not dispute this point. Regarding element (1), the VA, the Department of Justice, the Department of Health and Human Services (HHS), and apparently the majority are in agreement that McKelvey is a handicapped individual under the Act. After Congress enacted Section 504, the President directed the predecessor of HHS, the Department of Health, Education, and Welfare (HEW), to promulgate regulations that would establish "standards for determining who are handicapped individuals." He further instructed each subject federal agency to issue "regulations ... consistent with the standards established" by HEW. Executive Order 11914 (April 28, 1976). In carrying out this directive, HEW asked the Attorney General of the United States for an opinion whether alcoholics are "handicapped individuals." After carefully reviewing the legislative history, the Attorney General answered that question in the affirmative. *See* 43 Op.Att'y Gen. No. 12 at 2 (April 12, 1977). HEW then issued guidelines reflecting this conclusion, *see* 43 Fed.Reg. 2137 (1978), and the VA, in turn, adopted those guidelines by regulation. *See* 38 C.F.R. § 18.403(j)(2)(i)(c). In sum, no serious contention exists that alcoholics are not handicapped individuals within the meaning of the Act.

The dispute in this case involves the other two elements of Section 504. Concerning element (2), the VA argues that McKelvey is not "otherwise qualified" for the benefit program in question for, even if it is conceded that his alcoholism rendered him handicapped, he has nonetheless failed to meet the ten-year deadline for use of educational benefits. *See* Brief for Appellants at 17. This is bootstrap argument. McKelvey's challenge targets precisely the discriminatory operation of the deadline itself. The VA cannot tenably argue that the deadline scheme escapes inspection for discrimination because McKelvey is not "otherwise qualified" by virtue of the very same deadline implementation he has placed at issue.

In *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979), the Supreme Court explained what the statutory phrase "otherwise qualified" means. Quoting from an HEW regulation implementing Section 504, 45 C.F.R. § 84.3(k)(3) (1978)—a regulation that the VA has adopted as its own, *see* 38 C.F.R. § 18.403(k)(3)—the Court observed: "With respect to postsecondary and vocational education services, [an otherwise qualified individual is one] who meets the academic and technical standards requisite to admission or participation in the [school's] education program or activity." *Id.* The Court went on to quote HEW's explanatory note to the regulation, 45 C.F.R. pt. 84, App. A, at 405: "The term 'technical standards' refers to all nonacademic admissions criteria that are essential to participation in the program in question." 442 U.S. at 406, 99 S.Ct. at 2367.

Plaintiff McKelvey satisfies these requirements. The government does not suggest that McKelvey in any way fails to meet an "academic [or] technical standard requisite to admission or participation." The ten-year deadline plainly is not an academic standard, nor, according to the above-stated HEW definition, is it a technical one; indeed, it is not an admissions criterion at all, and it surely is not essential to McKelvey's successful participation in the program.

Turning finally to the element earlier set out as (3), *see supra* at 204, I inquire whether the VA's "willful misconduct" regulation discriminates against McKelvey "solely" on the basis of his handicap. As the district court explained in its thoughtful opinion, the VA's regulation automatically brands primary alcoholics as persons guilty of willful misconduct: the VA will not even consider evidence that might prove the branding false, for example, showings that McKelvey began drinking at the age of thirteen and that within his family, the incidence of alcoholism was high. Former alcoholics, in short, cannot gain deadline extensions by presenting facts indicating that they were not guilty of "willful misconduct." To gain time to use their accrued benefits, they must demonstrate that they were not primary alcoholics. By contrast, all other individuals need show only that they did not engage in "deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences." 38 C.F.R. § 3.1(n)(1). *See McKelvey*, 596 F.Supp. at 1323.[2]

The majority maintains, however, that this discrimination occurs on the basis of conduct, not handicap, and that therefore the VA's view on what constitutes "willful misconduct" need only be reasonable. *See* maj. op. at 200. Since the VA's view is reasonable, *see id.* at 200–02, "it would insult common sense to require the agency to make it repetitiously, by consistently denying nonpsychiatric defenses in individual adjudications instead of precluding them generically, as it has, by rulemaking." *Id.* at 203.

The majority nods in its conclusion that the discrimination contained in the "willful misconduct" regulation is based on conduct. As set out earlier, *supra* at 204, authoritative HEW guidelines, adopted by the VA itself, establish that alcoholism is a handicap. The VA's discrimination in this case was based on McKelvey's alcoholism. The VA's decision therefore discriminated on the basis of handicap. The majority's position would allow the VA to escape this syllogism by the simple expedient of redenominating alcoholism as conduct. Discrimination on the basis of alcoholism will therefore never be discrimination "solely" on the basis of handicap, because alcoholism is both conduct and a handicap. As a result, under the majority's analysis, the government can never discriminate on the basis of alcoholism unless it explicitly admits that it is discriminating against alcoholics solely because they are handicapped. This mode of analysis effectively nullifies Section 504 coverage of alcoholics.

Similarly, the government argues that the VA's discrimination rests not "solely" on McKelvey's handicap but also on the passage of the ten-year delimiting period. *See* Brief for Appellants at 17. This twice-made argument gains no force through repetition. It fails here for the reason that the same argument failed to prove McKelvey was not "otherwise qualified": passage of the ten-year period forecloses McKelvey's use of educational benefits *only* because the VA has created a time limit that discriminates against primary alcoholics. An agency may not promulgate a regulation that discriminates solely on the basis of handicap and then sensibly argue that because the regulation is an additional basis for the discrimination, the agency does not discriminate solely on the basis of handicap.[3]

---

2. The VA argues that its regulation does not presume willful misconduct but merely "focuses" the factfinder's attention on "whether an underlying psychiatric disorder caused excessive drinking." Brief for Appellants at 20. This "focus," however, conclusively denies that alcoholic veterans who do not suffer from an acquired, classifiable psychiatric disorder may be innocent of willful misconduct.

3. The government's appeal to *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), is unavailing. That decision did not broadly hold, as the government claims, that "the Rehabilitation Act does not invalidate statutory time limitations." Brief for Appellants at 18. Rather, the Court held only that the neutral time limit on hospitalization benefits at issue in that case did not create the kind of disparate impact between handicapped individuals and others that would constitute discrimination un-

B. *38 U.S.C. § 1662(a)(1)*: The VA's next argument does not stem from the Rehabilitation Act but from the statute governing veterans benefits time limit extensions: the VA argues that the statutory time · prescription, 38 U.S.C. § 1662(a)(1), incorporated the VA's definition of "willful misconduct." To uphold McKelvey's Rehabilitation Act claim, the government therefore contends, we would have to find that Congress' extension of that Act to the federal government in 1978, *see* 29 U.S.C. § 794a(a)(2), implicitly repealed section 1662(a)(1), which was passed in 1977. Implicit repeals, however, are disfavored and should be found only when two statutes are irreconcilable. *See Morton v. Mancari*, 417 U.S. 535, 549–50, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). The VA thus urges us to accept its interpretation of the Rehabilitation Act so as to reconcile the two statutes.

As already explained, *supra* at 204–05, the VA's interpretation of the Rehabilitation Act is not persuasive. Nor need one indulge the VA's interpretation in order to "harmonize" the two acts, for there is no necessary conflict between the statutes. Unavoidable conflict arises only if one accepts the VA's contention that section 1662(a)(1) incorporated into the statute itself the VA's definition of "willful misconduct" as applied in the context of alcoholism. For McKelvey's claim to succeed, therefore, we need only invalidate pro tanto the VA regulation, 38 C.F.R. § 3.301(c)(2), equating alcoholism with "willful misconduct," as the VA applies that regulation in administering section 1662(a)(1). It would thus be possible to invalidate the regulation but leave section 1662(a)(1) intact.

For the argument that section 1662(a)(1) incorporates or codifies the VA's definition of "willful misconduct" in *its* entirety, the VA relies on a passage from the Senate Report accompanying the section. By regulation, the VA had for many years provided for extension of the time limit on benefit utilization in cases of disability not occasioned by "willful misconduct," and since 1964, the VA had characterized primary alcoholism as "willful misconduct." *See* maj. op. at 196–97. Congress passed section 1662(a)(1) in 1977 to provide by statute for time limit extensions in cases of disability not a result of "willful misconduct." The accompanying Senate Report noted: "In determining whether the disability sustained was the result of the veteran's own 'willful misconduct,' the Committee intends that the same standards be applied as are utilized in determining eligibility for other VA programs under title 38. In this connection, see 38 C.F.R., part III, paragraphs 3.1(n) and 3.301 [the "willful misconduct" regulation], and VA Manual M21–1, section 1404." S.REP. No. 468, 95th Cong., 1st Sess. 69–70 (1977).

I do not read this passage, as the VA does, to codify the particular regulations cited in the Senate Report. If Congress had intended to import those specific provisions into the statute, one might have expected Congress simply to transfer to the legislation the very words appearing in the regulations. Instead of reading the Senate Report passage to indicate that Congress meant to freeze by statutory incorporation particular regulatory provisions, I think another interpretation more sensible: Congress, in 1977, envisioned only that the VA would use the "same standards"—whatever those standards might be as contained in the effective regulations at any given time—in granting extensions as in "determining eligibility for other VA programs." The passage's reference to particular regulations "[i]n this connection," I therefore conclude, was intended not to indicate that Congress was codifying those regulations but only to point out as illustrative the standards used at that time in eligibility determinations. Thus, I believe we may and should grant McKelvey's Rehabilitation Act claim and invalidate the VA's "willful misconduct" regulation pro tanto—

der the Act. But the opinion clearly indicated that a time limit, such as the one before us, that is *not* neutral on its face as between handi-

capped individuals and others *would* constitute intentional discrimination. *See* 105 S.Ct. at 720–23.

as it applies to exclude former alcoholics from educational benefit time limit extensions—without implicitly repealing section 1662(a)(1).[4]

Congress apparently did alter its perspective in 1978 on whether the "same standards" should be used in granting extensions as in "determining eligibility for other VA programs." The 1977 Committee Report, as quoted above, seems to be simply adverting to the general principle that like phrases should be read alike in the same statute absent contrary indications. As I will explain, *see infra* at 208–09, the specific operation of the Rehabilitation Act is such a contrary indication: Section 504 prohibits the VA from applying its definition of willful misconduct to educational benefit time limit extensions but not in other contexts, such as determining eligibility for disability compensation.

In a further attack on the conclusion that the Rehabilitation Act requires a modified reading of the "willful misconduct" regulation, the VA cites legislative "history" that postdates the Act. After the 1978 extension of the Rehabilitation Act to the federal government, the Senate in 1979, 1981, 1982, and 1984 passed bills which would have provided explicitly that alcoholism and drug addiction are not "willful misconduct" under section 1662(a)(1). On all four occasions, the bill met defeat in Conference Committee with the House of Representatives. *See* S.Rep. No. 604, 98th Cong., 2d Sess. 38–39 (1984). The Senate would never have proffered such an amendment to section 1662(a)(1), the VA contends, if the Senate had viewed the Rehabilitation Act, once extended to federal programs, as already altering the VA's position that primary alcoholism is in every case and for every purpose "willful misconduct." *See* Reply Brief for Appellants at 6–7.

As the per curiam opinion recognizes, *see* maj. op. at 199–200, the legislative activity emphasized by the VA is not a secure base for judicial decision. The Supreme

Court has often observed that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117, 100 S.Ct. 2051, 2060, 64 L.Ed.2d 766 (1980) (referring to interpretations of an earlier statute contained in later remarks of a Congressman and a committee report accompanying the amendment of a different statute); *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960); *see United States v. Clark*, 445 U.S. 23, 33 n. 9, 100 S.Ct. 895, 902 n. 9, 63 L.Ed.2d 171 (1980) ("[T]he views of some Congressmen as to the construction of a statute adopted years before by another Congress have ' "very little, if any, significance." ' *United States v. Southwestern Cable Co.*, 392 U.S. 157, 170 [88 S.Ct. 1994, 2001, 20 L.Ed.2d 1001] (1968) (quoting *Rainwater v. United States*, 356 U.S. 590, 593 [78 S.Ct. 946, 949, 2 L.Ed.2d 996] (1958))."); *Rainwater v. United States*, 356 U.S. 590, 593, 78 S.Ct. 946, 949, 2 L.Ed.2d 996 (1958) (amendment of statute by later Congress is "merely an expression of how the [later] Congress interpreted a statute passed by another Congress" and so has "very little, if any, significance").

I see no reason to accord the "subsequent legislative history" underscored by the VA any more weight than usual. I find no indication that Congress, in dealing with the Senate bills, ever even adverted to the question whether the Rehabilitation Act, as extended to federal programs in 1978, already required alteration of the VA standard. As the Sixth Circuit held on precisely this issue, "we should not read a later Congress' attempt to abolish the willful misconduct standard as 'proof' that an earlier Congress had not already vitiated the willful misconduct standard, as applied by 38 C.F.R. § 3.301(c)(2), by enacting the

---

**4.** Because this is not a case of unavoidable conflict, the VA's observation that in cases of such conflict a more specific statute controls a more general one, *see* Brief for Appellants at 17, is irrelevant.

1978 amendments to the Rehabilitation Act." *Tinch*, 765 F.2d at 602.[5]

Most forcibly, the VA and the majority argue that if the Rehabilitation Act invalidates the VA's view that "willful misconduct" includes alcoholism in the context of time limits on educational benefits, the Act must also invalidate the position that those same words include alcoholism for the purpose of limiting the availability of service-related disability compensation. *See* 38 U.S.C. § 310. The unacceptable policy consequence of altering the regulatory definition in the latter context is apparent: the VA would have to pay disability compensation to alcoholics as long as they remained alcoholics, thereby deterring alcoholics who could become abstinent from achieving rehabilitation. *See* Brief for Appellants at 14–15; maj. op. at 201 n. 3.[6]

I believe, however, that the Rehabilitation Act indeed does alter the VA's definition for one purpose but not for the other. As the majority recognizes, *see* maj. op at 201 n. 3, the original regulations issued by HEW to implement the Act,[7] included the provision now codified at 28 C.F.R. § 41.51(c): "[E]xclusion of a specific class of handicapped persons from a program limited by federal statute or executive order to a different class of handicapped persons is not prohibited by [the Act]." 42 Fed.Reg. 22676, 22679 (May 5, 1977) (promulgating the provision as 45 C.F.R. § 84.4(c)). The

disability compensation program fits this description: it is limited by federal statute to those with service-related disabilities not attributable to "willful misconduct." In this context, therefore, the Rehabilitation Act does not impact on the VA's view that "willful misconduct" includes alcoholism, because the Act contemplates that programs created to benefit specific classes of handicapped persons may exclude other classes.

By contrast, the VA's educational benefits program surely is not "a program limited by Federal statute to a [specific] class of handicapped persons." Rather, it is a program open to *all* honorably discharged veterans. *See* 38 U.S.C. § 1661(a). The exclusion of alcoholics occurs not in the delineation of the program's scope but only in the restrictions on time extensions for claiming the program's benefits. The discrimination, in other words, is not part of the definition of the program but is inserted in a subsection dealing with the program's administration. The former kind of "discrimination" (helping only the handicapped and then, only some of them) is only the special targeting of resources to alleviate certain conditions; the latter kind (helping all veterans but then, dropping out some on the basis of handicap) reflects the sort of hostility that the Rehabilitation Act was designed to correct.

---

5. The VA also reminds us that a "court may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration," especially when "Congress has re-enacted the statute without pertinent change." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1761–62, 40 L.Ed.2d 134 (1974). The interpretation at issue here, however, is not the VA's longstanding interpretation of § 1662 but its interpretation, mint-new with this case, of the Rehabilitation Act, a statute not within the VA's exclusive province or special competence to administer.

6. As authority for this argument, the VA relies primarily on a Senate report that accompanied one of the bills to amend § 1662(a)(1). *See* Brief for Appellants at 14. The report stated that the Committee wished to exclude alcoholism from "willful misconduct" in the context of time extensions for educational benefits but not in the context of disability compensation. *See*

S.REP. No. 314, 96th Cong., 1st Sess. at 25–26 (1979). Based on this statement, the VA contends that the Committee must have believed that the Rehabilitation Act, had it invalidated the definition in the one context, would also have invalidated it in the other. Nothing in the Senate report, however, remotely indicates that the Committee considered the effect of the Rehabilitation Act at all; the Committee merely wanted to emphasize that although it had decided to make what it considered to be a change in one provision, it did not wish symmetrically to alter a different provision.

7. The Supreme Court has described these regulations as "an important source of guidance on the meaning of section 504." *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661 (1985); *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 1254–55, 79 L.Ed.2d 568 (1984).

The majority reasons, however, that the "willful misconduct" regulation effects merely the "exclusion of ... a specific class of handicapped persons from a program limited by federal statute ... to a different class of handicapped persons" because the "program" from which McKelvey has been excluded is not the educational benefits program in its entirety but only the educational benefits program *after* ten years has elapsed. Maj. op. at 201 n. 3. The majority cites no authority for this stilted definition, and the notion that the educational benefits program somehow becomes a new and different program after a delay of ten years defies common sense and common use of the term "program." Moreover, like the majority's argument that discrimination against alcoholics is appropriately characterized as discrimination on the basis of conduct, the majority's inclination narrowly to define "program" ultimately will enfeeble the concept "discrimination." If the VA may explain every act of discrimination against alcoholics in favor of other handicapped persons as simply the exclusion of alcoholics from a narrowly defined program, discrimination against alcoholics can never occur in any program for the handicapped.

Unlike the majority's position, my view of the statutory complex advances both the policies underlying the veterans disability compensation statute and those on which the Rehabilitation Act rests. The view I take of the various legislative parts does not require the VA to pay alcoholics compensation as long as they remain alcoholics, and thus does not create an unfortunate incentive for those individuals. But my reading of the Rehabilitation Act as it impacts on 38 U.S.C. § 1662(a)(1) does assist formerly addicted individuals who have stopped drinking and were never guilty of willful misconduct (judged on a case-by-case basis) to make a new start by gaining or completing an education.

## CONCLUSION

The Board of Veterans Appeals itself observed in this case that it had "no doubt that if an extension were granted [McKelvey] would use the benefits wisely and become a more productive member of society." *In the Appeal of James P. McKelvey, Findings and Decision* (Aug. 6, 1980), J.A. at 34. I believe that Congress' central goal in the Rehabilitation Act was precisely to free handicapped individuals from the kind of discrimination McKelvey encountered so that they could become more productive members of society.

By contrast, the VA's exclusion of rehabilitated alcoholics from consideration for educational benefits time limit extensions, and the majority's sufferance of the VA's policy, annul the intended effect of the Rehabilitation Act. The majority would allow federal agencies simply to label a handicap as falling into some other category contained in the statute entrusted to the particular agency's administration—for example, "willful misconduct." The agency need then demonstrate only that its view is "reasonable." The majority thus entirely abandons the heightened sensitivity to the condition of handicapped persons required by the Rehabilitation Act in favor of the lax standard of rationality to which all agency actions must conform. Because I believe that this mode of analysis frustrates the broad remedial purpose of the Rehabilitation Act, I dissent.

SCALIA, Circuit Judge, concurring in part and dissenting in part:

While I am as eager as my colleagues are (and, evidently, as the Veterans' Administration initially was) to avoid enmeshing this court once again in the issue of determining the proper scope of § 211(a), *see Gott v. Walters,* 756 F.2d 902 (D.C.Cir.1985), *vacated and reh'g granted,* 791 F.2d 172 (D.C.Cir.1985), *remanded with instructions to dismiss as moot,* 791 F.2d 172 (D.C. Cir.1985); and while there is a wicked attractiveness to letting the VA lie in the bed that counsel has made for it, I do not agree with our assertion of jurisdiction in the present case. An administrative officer necessarily "decides" all issues within his

competence upon which the lawfulness of his action depends, whether or not he specifically adverts to, or is even aware of them— just as a court necessarily "decides" all issues logically essential to the validity of its holding, whether or not it explicitly addresses or considers them. *See, e.g., Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 182–83, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979). I think § 211(a) uses the phrase "decisions of the Administrator" in this sense. It is a most unlikely estimation of congressional intent, and one with troublesome policy consequences, that the Administrator should be able to control the scope of judicial review of his determinations by simply designating which underlying issues he chooses not to decide. Since there is no conceivable reason why the Administrator was unauthorized, or indeed anything less than *obliged,* to decide how the Rehabilitation Act affected the present adjudication—regardless of whether his decision had to be made with deference, or even with absolute subservience, to the views of another executive official— it seems to me that in addressing that point we are reviewing a decision of the Administrator, in violation of § 211(a). I would therefore dispose of this case, as the Second Circuit has recently disposed of a virtually identical appeal, by dismissing for lack of jurisdiction. *See Traynor v. Walters,* 791 F.2d 226 (2d Cir. 1986), *rev'g Traynor v. Walters,* 606 F.Supp. 391 (S.D.N.Y.1985).

Since, however, the majority of the court has determined otherwise, I have joined in the court's consideration of the merits, and concur in Parts I and III of the opinion.